Ragan et al. *v.* Cargill et al.

CECELIA RAGAN et al., Administrators of William Cargill, *vs.* MICAJAH CARGILL et al.

At common law, and according to the original practice of the courts, depositions could not be taken *de bene esse* without the consent of parties, as either party could require the presence of witnesses in court.

Where consent was obtained, it was then the practice, where a material witness resided or was going abroad and could not attend the trial, for the party desiring his deposition to apply to the court in term time, or to a judge in vacation, on a proper affidavit, for an order to have the witness examined *de bene esse* before one of the judges of the court, or a commissioner specially appointed for that purpose and approved by the opposite party.

Depositions so taken could not be considered or read without the production of the commission, unless they were of so long standing as to afford a presumption that the commission was lost.

To obviate the inconvenience arising from this strict common law rule, a modification of the practice was obtained by an act of parliament, and in this State the rule has been relaxed by several legislative enactments.

In courts of law, witnesses must still be examined before the jury, except in the instances and according to the mode provided by the statute. Hutch. Code, 861, § 113, 114, 116, and act of leg., 1837. And in every case therein enumerated a commission is required to issue, except in cases of witnesses absent or residing out of the State ; and an affidavit filed, setting forth the reasons for taking the deposition.

This court has heretofore declared a deposition irregular and insufficient, without the name of the commissioner is inserted at the time of the issuing of the commission. 6 S. & M. 438, cited and confirmed.

Depositions taken without a compliance with the statute and rules prescribed, are irregular and unauthorized, and 'the deposition of T. C., having been taken without any affidavit filed, and commission issued, it is *held* to have been taken without any legal authority, and was *improperly* admitted as evidence.

The practice of reading depositions in the chancery court, taken by justices of the peace without any commisssion, will not justify a similar practice in the circuit and probate courts, where such practice has not obtained, it being contrary to the statute.

Ragan et al. *v.* Cargill et al.

There is a wide difference between courts of law and courts of chancery in the manner of establishing facts before them; and in the absence of any legislative enactment, the chancellor has the right to prescribe the rules, and before whom depositions shall be taken; but as a general rule, in the courts at law, all testimony must be given orally, except by the express provisions of the statute.

Neither court can dispense with the statutory rules in taking testimony to prove facts, except by the consent of the parties concerned.

A deposition, therefore, which would be excluded in the circuit court on the trial of an issue pending therein, should for like reasons be excluded on the trial of an issue sent from the probate court.

A justice of the peace, in his capacity as justice, has no authority *ex officio* to take depositions without a commission for that purpose.

If a party, without receiving a notice to attend the taking of depositions, is present and cross-examines the witness, that is a waiver of notice; but not a waiver of the want of a commission and the failure to make affidavit as required, before the deposition can be taken.

A deposition read in the circuit court, on the trial of a case, without objection, does not preclude a party from objecting to it on another trial. 1 How. 479, cited and confirmed.

The right to object to the deposition in this case was reserved in the probate court by the order sending the issue to the circuit court, and the objection to the deposition was well taken.

Without the deposition of T. C., the testimony is contradictory, and makes it a case peculiarly fit for the determination of a jury, and would not warrant this court in sustaining the verdict without the admission of the illegal testimony.

It is the correct rule, that where there is conflicting evidence, and on the trial material, important, and relevant testimony, which may have influenced the jury in forming their verdict, has been improperly admitted, to remand the cause for a new trial.

On appeal from the probate court of Hinds county; Hon. A. R. Johnston, probate judge.

On the 29th of July, 1845, Micajah Cargill and others filed their petition in the probate court of Hinds county for distribution. In said petition they made a " statement of their connection in blood with " the intestate, who, they allege, " left the following relations, who are the petitioners," &c., namely, " a brother," " a sister," &c.

On the same day, July 29th, 1845, a summons was issued and served on the defendants, requiring them to appear at the August term, 1845, and answer said petition.

46 *

At the said August term, the defendants filed their answer, in which they said " they do not know whether the said parties complainants are the legal distributees of their intestate or not," and insisted on strict proof that said petitioners " are entitled to receive what they demand," &c. &c. Whereupon the court, after reciting the answer, and that the cause came on to be heard, ordered the answer to be filed, " and that said citation be dismissed at cost."

On the same day on which said petition was filed, to wit, the 29th July, 1845, Micajah Cargill, one of said petitioners, caused a notice to be served on the defendants, that on the 2d day of August, ——, twenty-three days before the day on which the defendants were cited to appear and answer, and before they did actually answer, he would take the deposition of Thomas Cargill, to be read as evidence in the case. The deposition was taken accordingly. But no affidavit was filed, stating such facts as are necessary to be shown in order to take a deposition *de bene esse;* nor any order of court authorizing the taking of it before any answer was filed or any issue made up; nor any commission empowering the justice of the peace to take it.

At the December term, 1845, a motion was made by the defendant's counsel, — the " cause being brought for hearing," — " that this court shall direct an issue to be made up and sent to the circuit court of Hinds," namely, whether the petitioners are the lawful kindred of said intestate, and entitled to distribution. This motion was sustained; and the court ordered " that an issue be formed, made up, and tried, by the parties to this cause, in the circuit court," &c., " to inquire, ascertain, and determine whether the complainants or petitioners are the brothers and sisters of William Cargill, as set forth in the petition." The court, in directing that an issue should be made up, seems to have omitted the nephews and nieces; and the language of the order would seem to indicate an intention that " the parties " should make up a formal issue, — not the court.

It was further ordered, that the parties might read and refer to the pleadings and proof in the cause; subject, however, to

all just exceptions as to the competency of witnesses, or the legality of depositions, and of the matter contained in them.

It appears that defendant's counsel notified the probate court that he objected to Thomas Cargill's deposition, on the ground that it "had. been irregularly and illegally taken, and that he wished to reserve the right of excepting to it in the circuit court on that ground;" and the court thereupon inserted the words, "or the legality of the depositions," as one of the objections expressly reserved.

At the January term, 1846, of the probate court, — a term subsequent to that during which the court had ordered the issue to be made up and sent to the circuit court, — the interrogatories and depositions of three witnesses, on behalf of the petitioners, "were returned into the probate court."

These depositions of Andrew Welch, Nancy Wiggins, and Temperance Thomas, of North Carolina, were taken without any affidavit, without any order of the court authorizing a commission to take them, and were certified and sent to the circuit court by the probate clerk and after the issue had become a question pending in the circuit court, or rather after the probate court had directed the case to be sent to the circuit court, and directed the parties there to form the issue.

The verdict of the jury was, that the jury find that said petitioners are the lawful heirs and distributees of William Cargill, deceased, as set forth in said petition.

The defendants moved for a new trial in both the circuit and probate courts. The grounds of the motion in the probate court are as follows, viz.: —

1. The circuit court erred in refusing to continue the case, for the reasons stated in Ragan's affidavit.

2. In permitting Thomas Cargill's deposition to be read as evidence to the jury; said deposition having been taken before the answer was filed; before there was any issue; and there being no order of court, authorizing the taking of said deposition; nor commission issued to the justice of the peace to take it.

3. In permitting the three depositions of Welch, Wiggins, and Thomas to be read as evidence, the clerk of the probate

court having issued a commission to take them without any authority or order of court; said depositions not having been filed, when the order, directing the issue to be sent to the circuit court, was made; but being filed afterwards and sent to the circuit court by the clerk of the probate court, without an order of the probate court authorizing it.

4. In permitting the record of the suit for maintenance from Alabama, in the case of *Demarias* v. *Thomas Cargill*, to be read as evidence; the same being incompetent testimony.

5. The verdict is contrary to the law and evidence.

6. The verdict is against the weight of evidence.

7. There was no issue, and the verdict has no reference to any thing.

8. The verdict finds law and not facts.

9. There was misconduct and misbehavior on the part of the jury.

The probate court overruled the motion; and the defendants by their counsel excepted.

*C. S. Tarpley*, for appellant.

The first error of the court below, to which the attention of this court is directed, was the admission of Thomas Cargill's deposition. And this is objected to upon several grounds.

1. Because the deposition was taken before the answer was filed.

2. Because there was no affidavit of the materiality of the witness, or that he was aged, infirm, or about to remove out of the State.

3. Because it was taken without a commission and interrogatories.

The mode pointed out by the statute for taking depositions is, to make affidavit of materiality, file interrogatories, and take out a commission. Hutch. Code, 862, § 116. This is a law of general application, and is not confined to the practice of the circuit court; and this is proven most clearly by the amendment subsequently made to it. Hutch. Code. 869, where the affidavit is dispensed with. When a witness living in another State, happens to be in this, his deposition may be taken

Ragan et al. *v.* Cargill et al.

according to the mode pointed out in the 113th section. It will be found, upon examination, that the provision of this act is not limited to any particular court.

The law directing plenary proceedings in the probate courts, Hutch. Code, 647, directs that the depositions of the witnesses be taken in writing, and that the judge shall certify as to the correctness of the testimony. See *Ross* v. *Mims*, 7 S. & M. 121. But this evidently means that the evidence given in court shall be reduced to writing, so that the whole case may be placed upon record under the authority of the judge, who certifies to its correctness, so that the decree of the probate court may be made upon the evidence, as pointed out in the 8th section, and to effect the purposes contemplated by the 12th section, which could not be done unless the testimony was in writing. And to place this matter beyond all doubt, the 9th section authorizes the probate court to compel the attendance of a witness to give evidence in court; so that it is very clear that it was intended by the law that the testimony given in court should be reduced to writing. This law, however, does not change the mode of taking depositions, nor does it confine the circuit courts to the evidence so taken down and certified by the probate court, because it may summon witnesses and try the issue, as other issues are tried.

But the deposition is equally defective when tried by the chancery court law. When a deposition is taken in that court before the answer is filed, it must be upon an affidavit filed by the party, upon which the commission may issue. Hutch. Code, 762. And in that court it must be taken under commission and by interrogatories filed. Sec. 57.

The deposition must be taken either under a general or special commission, as it is the appointment which gives the commissioner power to take the deposition. *Merrell* v. *Bell*, 6 S. & M. 730.

The chancellor may appoint general commissioners, as pointed out in section 31; and his power to take a deposition in the absence of a special commissioner, is derived from his appointment as general commissioner; and unless a deposition be taken before a general or special commissioner, the party tak-

ing it had no power to act, and the person testifying is not a witness in the case. Again: a commissioner would have no power to take a deposition under circumstances that would prevent a commission from being issued. By the 2d section of the act of 1848, Hutch. Code, 770, a complainant may take his depositions after the expiration of thirty days from the filing of his bill, and not before, unless special cause be shown by affidavit.

In England, the taking of depositions is regulated by rules of court; but in this country they are taken by the authority of the statute, and the party taking them must show that they are taken under proper authority of law, and in strict conformity to the statute. *Saunders* v. *Erwin,* 2 How. 733; *Rupert* v. *Grant,* 6 S. & M. 433; *Martin* v. *King's Heirs,* 3 How. 141; *Hemphill* v. *McBride,* 12 S. & M. 620; *Smith* v. *Natchez Steamboat Co.,* 1 How. 415.

The deposition, then, being clearly defective, for want of many essential requisites, the question arises, has the defendant waived the defects?

1. By the cross-examination? Most clearly not. A cross-examination is a waiver of the notice, nothing more; and does not preclude the party from objections to the regularity of the deposition at the trial. In all the cases referred to above, the witnesses were cross-examined, and yet the objections taken at the trial were sustained, and upon the ground that it was no surprise to the party. 1 Call, R. 322.

2. By not making the objection in time? It may be that, according to the practice in the chancery court, an issue will not be directed to be made up and sent to the circuit court to be tried, until the hearing; but it does not necessarily follow that the same rule would prevail in the probate court. This is a statutory power, to be exercised as either party shall desire it. The object of the issue is to ascertain facts, and the decree is to be based upon the finding. Hutch. Code, 647. If there had been a hearing in the probate court, the objection would be entitled to some weight; but there was no hearing in that court.

The first step taken after answer filed, was to move for an

Ragan et al. *v.* Cargill et al.

issue to be made up and tried in the circuit court, and the objection to the deposition was made in the probate court. In directing the issue, there was a saving to the parties of the right of objecting to the legality and competency of the depositions. The probate court did not pass upon the objections, but left the question open, by referring it to the circuit court, and the bill of exceptions shows that the right of objecting to the deposition was specially reserved, and that it was so understood by the court, and the question adjourned with the issue to the circuit court.

The object of the rule requiring objections to be made at the proper time is, that parties may not be taken by surprise, but that they may have an opportunity to rectify irregularities. The petitioners had full notice in this instance, and the objection was made at the first opportunity. Every party must have an opportunity to object to evidence, and in a court of law, this is done when the evidence is offered. The party taking the deposition must see to its regularity, and the objection will not be considered as a surprise upon him, if the deposition be defective. *Smith* v. *Natchez Steamboat Co.*

But there was something more than an irregularity in this deposition. It was intrinsically and essentially defective. The justice had no power to examine the witness, and the examination had no connexion with the suit; and nothing short of an express assent would have made it admissible. When depositions are taken in violation of some rule of court, as in the case cited by the counsel on the other side, it does not constitute a defect, but only a violation of a rule of court, over which the court could exercise discretion.

In England, depositions are taken under rule of court, and courts of chancery are very much inclined to overlook irregularities, because in such cases it has discretion. But here there is no discretion; it is regulated by positive statute, and the parties cannot complain. They had full notice, and ample time, in which to have retaken the deposition.

It is contended, that it is too late to move to suppress a deposition for irregularity, after an effort to impeach the credit of a witness. But the rule is confined to mere irregularities;

whereas this is no deposition at all, inasmuch as it is defective in every substantial particular. But a conclusive answer to this is, that the objection was made in the probate court before any impeaching deposition was taken or filed; and besides this, the issue was tried in a court of law, subject to all the rules which govern in the trial of other issues, and the question was, Was the deposition competent evidence in a court of law? The objection was made in both courts, and the same ceremony must be observed in both courts, in order to make the deposition valid.

It being conceded, then, that the deposition of Thomas Cargill was improperly admitted, the next question arises, does that afford sufficient ground for a new trial? That it does, I conceive to be equally clear.

The granting of new trials is no longer left as a simple matter of discretion with the courts, when long established and well defined rules have been laid down, by which such motions are to be governed. The English courts adhere to the decision in the case of *Doe* v. *Perkins*, 3 T. R. 749, in which Lord Kenyon remarked, that "the rule appeared to have been clearly settled, and every day's practice agreed with it, that where illegal evidence had been admitted, the court would grant a new trial." The same rule has been established by the courts of New York, Virginia, and other States, and the reason given for it is, that "the court cannot say what effect such evidence may have had on the minds of the jury." *Marquand* v. *Webb*, 12 Johns. R. 89, 92; *Osgood* v. *Manhattan Co.*, 3 Cowen, 612, 621; 2 Hall's R. 40. See also 6 Cowen, 316; 10 Wend. 377; 8 Cowen, 223; 1 Munford, 288. In this last case, Judge Tucker says, "illegal or improper evidence, however unimportant it may be, ought never to be confided to the jury; for if it should have an influence upon their minds, it will mislead them, and if it should have none, it is useless, and may at least produce perplexity." And in *Walker* v. *Leighton*, 11 Mass. 140, the court say, that a new trial may as well be granted for the admission of evidence which is impertinent, as for that which is incompetent." See also 2 Wash. R. 276; 1 Hawks, 6; 4 Pike, 527; 2 Humph. 88.

Ragan et al. *v.* Cargill et al.

The case of *Stiles* v. *Tilford*, 10 Wend. 388, is not to be considered a modification of the rule, when it is remembered that the court declared that " the action was anomalous in its character, and that the ordinary rules of evidence could not be applied to it, without defeating its essential object." In the case in 3 Cowen, where the court unanimously concurred in the opinion delivered by the judge, it was said, " it was a well settled rule, that if improper evidence be given, although it may be cumulative only, the judgment must be reversed; for we cannot say what effect such evidence may have had on the minds of the jury." Graham, in his Treatise upon New Trials, after citing and commenting upon the above authorities, and one or two others where it was said that the rule had been modified, settles down to the opinion of the court, as expressed in 3 Cowen, as being the true rule upon this subject; and in the 7th vol. U. S. Dig., a reference is made to 1 Strobhart, 136, in support of the same position.

In our own court, this question was raised in the case of *Barringer* v. *Nesbit*, 1 S. & M. 22, where it was said that the admission of illegal evidence was no ground for a new trial, if it appeared that there was sufficient legal testimony to justify the verdict, and it was clear that justice had been done, and where there was little reason to believe that a different result would ensue upon another trial; but in a doubtful case, the rule would be different. With a high respect for Judge Clayton, who delivered the opinion of the court, I must be permitted to say, that with all the guards and conditions with which the opinion is surrounded, it savors of the influence of an opinion by another tribunal more despotic in its character than even the English courts, where the judges always claimed the right of instructing the jury how they should find upon the evidence; and the opinion is not supported by the authorities cited by the judge. In *Davis* v. *Black*, 5 S. & M. 226, and *Hand* v. *Grant*, Ib. 508, examples are given by the court to show what was considered as other proof in the case that would have justified the verdicts, although some of the proof was incompetent on the trial. It will be found in these cases, that the incompetent proof did not add any thing whatever to the strength of the case. The same doctrine is laid down in *Routh* v. *Agricultural Bank*, 12 S. &

Ragan et al. *v.* Cargill et al.

M. 161, where the court say, that the testimony illegally admitted must be merely cumulative in its character, and the exclusion of which would not have changed its result. But in this and all other cases, where the court speaks of such testimony as not being sufficient to change the result, even if excluded, it means, of course, that the testimony did not add any thing to the strength of the case, but that the legal testimony made it so clear and conclusive, that no doubt could exist as to the correctness of the finding of the jury. But if it were possible that the jury placed any reliance upon the testimony, or could have been misled by it, a new trial should be granted. See 7 Cowen, 449. It will not do for the court to say, " I am satisfied with the verdict, notwithstanding improper evidence was admitted; " it must go further, and say that " the jury could have placed no reliance whatever upon the incompetent testimony, inasmuch as the competent evidence was clear and conclusive without it." And this is what I understand to have been the opinions of the court in the cases cited from S. & M. To test this matter, let us suppose that the deposition in this case had been rejected, and the jury had found. a verdict for defendants, would the court set aside the verdict upon the ground that the jury found contrary to the evidence in the case? If it would not, then it is clear that the legal testimony does not make such a case as was contemplated by the court, when they said that the exclusion of the testimony would still leave an ample amount of legal evidence upon which to predicate the verdict. The evidence being illegal, the defendants in error hold the affirmative, and say, " admit this to be so ; yet there is such a preponderance of proof on the side of the petitioners, that the court would be bound to grant a new trial, had the jury found for defendants." To show that the court would not have granted a new trial, see 1 S. & M. 157, 381; 5 Ib. 21; 8 Ib. 324, 298, 498.

Now, if the court permits itself to form a conjecture as to what testimony was relied on more than all other testimony in the case, it would unhesitatingly point to the evidence of Thomas Cargill. He was the ancestor, and the most material witness in the proof of pedigree. The fact to be established was, his own marriage; and amidst all the conflicting testi-

Ragan et al. *v.* Cargill et al.

mony upon this subject, who was presumed to know as much about the facts as the party himself? In the case of *Patterson* v. *Gaines,* 6 How. U. S. R., the court relied more upon the conduct and admissions of Clark, particularly while upon his deathbed, than upon any other testimony in the case. Had the issue depending upon Clark's marriage with Madame Carriere, originated in his lifetime, his testimony would have been considered conclusive. If the prosecution against DeGrange for bigamy was relied on by Judge Wayne, to prove that his second marriage was void, how much more conclusive would have been the evidence of DeGrange himself, in support of that fact. To the marriage of Clark, as well as to the first marriage of De-' Grange, there was one positive witness; and yet how anxiously the court feels about for something either said or done by both of these parties, to support the allegation of marriage. It shows the weight which is ever given to the statements of the party himself, making them more operative upon the minds of the jury than the statements of any or all persons beside. This case of *Patterson* v. *Gaines* is relied on to prove that the statements of one positive witness will outweigh a thousand who testify to facts negatively. The principle may be a good one, but the case is no authority. It was not only gotten up by concert, in order to become authority in the great case then pending in the circuit court of the U. States, but it has been overruled, and the marriage of Clark, the ancestor, pronounced never to have taken place, notwithstanding the positive testimony of the two sisters of Madame Carriere, to which Judge Wayne so triumphantly pointed. The decision recently made, but not yet reported, must bear with peculiar significance upon this case, where the testimony of the two sisters is so confidently relied on.

But it is said, that the testimony illegally admitted was but cumulative evidence, and, according to the decision in 12 S. & M., constitutes no ground for a new trial. I apprehend that the evidence was not cumulative, according to the definition given of cumulative evidence in the case of *Vardiman* v. *Byrne,* How. 365, and in the cases from Pickering, Wendell, Johnson, and others, referred to in *Graham on New Trials,* 493–499. So far from this, I consider the evidence of Thomas Cargill as be-

ing the very mud-sill upon which the petitioners attempt to build up their superstructure; as well might we say, in architecture, that the base was cumulative to the cap of the column, as that this deposition was cumulative to the other evidence in the case. It was the propositus, the real John Stiles, in the table of descents. It proved a fact, it is true, which was attempted to be proven by other witnesses; but when we see the manner in which those other witnesses have been impeached ·and discredited, and the volume of testimony which goes to disprove the marriage, in despite of the presumptions arising from their statements, no one can fail to perceive that this testimony rises above the grade of mere cumulative evidence, which I understand to mean, such evidence as tends to prove a fact which has already been sufficiently proven by similar testimony. See authorities above cited. I will illustrate my meaning more fully by a familiar example: Suppose the deposition of Thomas Cargill had not been taken, and a verdict had been rendered for defendants; that a motion had been made for a new trial, upon the ground of newly discovered evidence, which consisted of the deposition of Thomas Cargill, who was supposed to have been dead, but who, since the trial, had been discovered, and had given his deposition. Now, it is a well settled rule, that a new trial shall not be granted for newly discovered evidence which is cumulative in its character. But in the conflicting mass of testimony in this case, tending to prove and disprove the marriage, would not the testimony of the very man whose marriage was the very bone of contention, be considered more important than all others; and could any enlightened court, entertaining a proper regard for justice, refuse a new trial under the circumstances? Most clearly not. Then the testimony cannot be cumulative in the sense in which it is understood by the counsel of defendants.

In connexion with this part of the case, it will be proper for us to examine into, and see what constitutes a valid marriage, and how it is to be proven; we shall then be better prepared to make a proper application of the testimony in this case to the law which must govern it, and arrive at a proper conclusion as to whether there was a preponderance of proof on one side or

Ragan et al. *v.* Cargill et al.

the other. Marriage is but a civil contract, and, like other con-
tracts, has to be governed by the *lex loci contractûs*. A marriage
held good by the laws of the country where it is consummated,
shall be held good in all others where the question of its vali-
dity arises. Shelford on Marriage; Story's Conflict of Laws,
36; 2 Kent, 457; 3 A. K. Marsh. 1178; 1 Bland, 485. And, on
the other hand, a marriage void by the law where it is consum-
mated, is void everywhere else. Shelford, 123; 2 Hagg. 419.
This marriage is said to have taken place in North Carolina;
therefore it is incumbent on the petitioners to prove that it was
entered into according to the laws of that State. Dalrymple's
Case, 4 Hagg. Ecc. R. 485. In that case the court said, that as
the marriage took place in Scotland, its validity had to be de-
termined according to the laws of that country; and that where
the law prescribes a form for the celebration of marriage, it
must be celebrated according to that form, or it is void. The
forms of irregular marriages are swept away by the statute
which prescribes the necessity of resorting to a public and regu-
lar form, without which the relation of husband and wife can-
not be contracted for any purpose whatever. The statute laws
of North Carolina, up to the year 1796, are still the laws of
Tennessee, where they have not been altered by the legislative
enactments of the latter State; and the decisions of the Supreme
Court of Tennessee will be considered as peculiarly appro-
priate and binding as precedents, where the laws of North Caro-
lina, anterior to 1796, become the subject matter. In *Bashaw*
v. *The State*, 1 Yerger, 177–183, that court reviews the marriage
acts of North Carolina, and says, "that a marriage could not
be contracted in North Carolina for any purpose whatever, un-
less it were celebrated according to the laws of that State, by
giving a bond and obtaining a license; so that it may now be
laid down as a settled principle, that the common law doctrine
of proving the existence of a marriage by cohabitation, reputa-
tion, &c., no longer exists in a State which prescribes a certain
mode by which a marriage shall be celebrated; but that it must
be proven to have taken place according to the mode prescribed;
for when a statute prescribes a way in which a thing shall be
done, it is void, if done in any other way. Plowden, 206;

47 *

Carthew, 257; 1 Taunton, 136." See also 2 Yerger, 589; 4 Ib. 503; 5 Humph. 513. All marriages in North Carolina, as well as in Mississippi, are statutory marriages, and in this they differ from marriages at common law, that whereas by the common law any contract of marriage *per verba de presenti*, followed by cohabitation, would be good and valid, yet the statute law prescribing certain forms, they become conditions precedent to the validity of the marriage, and must be complied with, or the marriage is void. And should it at any time become necessary to prove the marriage, it must be proved to have been celebrated according to the laws of the State where it was entered into.

Here Mr. T. made a long and elaborate argument, based upon the testimony, to show that no marriage did take place, and that without the aid of Thomas Cargill's testimony, every presumption of marriage was rebutted.

*A. H. Handy*, on the same side,

Contended that Thomas Cargill's deposition was illegally taken, and improperly admitted in evidence.

1. The other witnesses to prove the marriage are shown by the testimony to be unworthy of confidence, either from mental imbecility, or from expectation of benefit from the success of these pretended heirs. 2. Thomas Cargill is the only witness who states that the marriage was celebrated under proper authority. 3. Although it was competent to prove the marriage by reputation and cohabitation, yet this is but presumptive evidence of it. Such reputation, in order to establish the presumption, must be general and unquestioned. Here it is shown to be questioned, and we think destroyed. Then, as the presumption is removed, and the main fact of marriage not positively or satisfactorily proved beyond doubt, by other witnesses, how vitally important was the testimony of Thomas Cargill to the main fact of marriage? 4. If the verdict be intended to embrace the nephews and nieces of William Cargill, it is wholly unsupported, as to them, by any evidence but that of Thomas Cargill.

Apart from the testimony of Thomas Cargill, the evidence

Ragan et al. *v.* Cargill et al.

upon the point of marriage is as positive against it as it is to sustain it. Several witnesses, the Joneses and others, prove an *alibi* at the time of the marriage spoken of by the witnesses for petitioners; and the proof as to reputation and cohabitation, is as strong against their being considered as lawful husband and wife as it is in their favor.

If, then, the testimony of Thomas Cargill might have had an influence with the jury, and if it was improperly admitted, it is to be presumed that it had its effect upon the jury. It was illegal evidence, and a new trial should have been granted, on account of its improper admission. 3 Cowen, 612; 2 Wash. Va. Rep. 276; 16 Johns. Rep. 89.

1. The issue sent to the circuit court is fatally defective, embracing only brothers and sisters.

2. The verdict is erroneous. Under the issue as made, it could only extend to brothers and sisters. If it extends to nephews and nieces, it is broader than the issue; if not to them, it does not cover the matters of the petition.

As to the position, that it is immaterial to the respondents who are found to be the heirs of William Cargill, because if he left any brother, sister, niece, or nephew, who are his heirs, his widow, the respondent, is entitled only to one half his estate, we reply, 1. That the alleged heirs must show their title; and, if defective, the judgment in their favor is erroneous. 2. The verdict is not responsive to the issue, and must be set aside. 1 S. & M. 692; 2 Wheat. 221–224; 4 How. 115–131; 1 Mason, 153. 3. This proceeding was against the administratrix of William Cargill, as such; and it is her duty to see that distribution is made to the proper heirs, if there be such. The judgment and distribution in the probate court would not bar the proper heirs, who might present themselves, they not being parties to the petition in the probate court. And it is the duty of the administratrix to see that all proceedings for distribution are regular and legal, because she is the trustee for the proper heirs, if such there be, whose interest she is bound to protect.

*L. Maury Garrett,* filed an elaborate printed brief for the appellants.

*T. J. Wharton*, for appellee.

*Geo. L. Potter*, on the same side.

Mr. Justice YERGER delivered the opinion of the court.

This case was submitted upon a re-argument. Its importance demanded from us a very careful consideration; and in our investigations we have been greatly assisted by the able and elaborate written, as well as oral, arguments, of counsel. The error which is principally relied upon as cause of reversal, consists in the admission of the deposition of Thomas Cargill, a witness in behalf of the petitioners.

The appellants contend, that this deposition should have been excluded for several reasons: 1st. Because it was taken before the answer of defendants was filed to the petition. 2d. Because it was taken by a person who had no authority to take depositions. 3d. Because it was taken without affidavit, or commission, or other lawful authority to take the same.

When this case was before the court on the first submission, it received from the late chief justice (Sharkey) a very thorough consideration and examination on the point of the sufficiency of Cargill's deposition, and it almost seems useless to revive positions taken by him; but as the point presented is important in practice, we have done so.

On the 29th day of July, 1845, the appellees, claiming to be the heirs at law and distributees of William Cargill, deceased, filed their petition in the probate court of Hinds county, asking for distribution of his estate. To this petition the appellants, who were the administrators of the estate of William Cargill, were made defendants. At the August term of the probate court their answer was filed, denying that petitioners were the heirs at law and distributees.

On the day the petition was filed, a notice was served by the petitioners on the appellants, that on the 2d day of August, the deposition of Thomas Cargill would be taken, at the court-house in Raymond, before Warren J. Jennings, to be read in evidence in behalf of the petitioners. On the day named in the notice, the deposition was taken in the presence of counsel

for both parties; and when so taken, was returned to the clerk of the probate court by Jennings, who, in taking it, purported to act as a justice of the peace. No commission was ever issued, empowering Jennings to take the deposition, nor was any affidavit made showing grounds, according to the statute, rendering it necessary and proper to take it.

By the principles of the common law, and according to the original practice of the courts of common law, depositions could never be taken *de bene esse*, without consent of parties. If disposed to insist upon his rights, a party could require the presence of witnesses in court, in order that he might cross-examine them in the presence of the jury. But as great practical inconvenience frequently resulted from a rigid adherence to these rules, the court uniformly exercised every legitimate power it possessed to induce parties to consent, by putting off the trial at the instance of the defendant, if the plaintiff would not give consent; and if the defendant refused, by declining to render judgment, as in case of nonsuit. Tidd's Pr. 810, 811; 1 Stark. Ev. 320. In an anonymous case, in 2 Chitty's R. 199, on a motion for a rule for leave to examine a witness on the affidavit of a physician, that it would endanger his life to attend the trial, the court refused the rule, saying the party must either apply to a court of equity, or get the facts admitted.

Also, in 4 Taunton, R. 46, the court refused a similar motion, unless with the consent of both parties.

Where consent was obtained, the practice was, when a material witness resided, or was going, abroad, so that he could not attend the trial, for the party desiring his evidence to apply to the court in term time, or to a judge in vacation, on a proper affidavit for an order to have the witness examined *de bene esse* before one of the judges of the court, or before commissioners specially appointed and approved by the opposite party. Tidd's Pr. 810. Depositions so taken could not be read without the production of the commission, unless they were of so long standing as to afford a presumption that the commission was lost. *Baylie* v. *Wylie*, 6 Esp. R. 85; Tidd's Pr. 814.

To obviate the inconveniences arising from the strict common

Ragan et al. *v.* Cargill et al.

law rule, requiring the consent of parties, a modification of the practice was obtained by act of parliament. In this State, the rigor of the common law rule has also been relaxed by several statutes. But in courts of law, unless by consent of parties, witnesses must still be examined before the jury, except in the instances, and according to the mode provided by the statute.

The first provision on this subject is contained in the circuit court law of June, 1822, (Hutch. Code, 861,) § 113, in which it is declared : " When any witness shall be about to depart the country, or by age, sickness, or otherwise, shall be unable to attend the court, upon affidavit thereof in open court, or before the clerk in his office, or any judge &c., the clerk of the court in which any suit is or shall be depending, may, on request of either party, issue a commission for taking the deposition *de bene esse,* &c., upon reasonable notice to the opposite party, of the time and place of taking the deposition."

Section 114 of the same statute, provides, if any party in a suit at common law or in chancery, will make oath that he verily believes his defence, or a material part thereof, depends on the testimony of a single witness, the court, or the clerk in vacation may award a commission to take the deposition of such witness *de bene esse,* although not about to depart the country, nor under any disability, upon reasonable notice being given to the adverse party.

The 116th section of the statute, declares that the depositions of witnesses who are absent from, and reside out of the State, may be taken on the filing an affidavit of the materiality and absence, or non-residence of the witness, the filing of interrogatories and notice thereof, and the issuance of a commission by the clerk. By section 3 of the act of February 13, 1837, provision was made, that commissions might issue to take the depositions of absent witnesses residing beyond the limits of the State, without an affidavit of the non-residence, or materiality of such absent witness, provided interrogatories were filed and served upon the opposite party, or his attorney.

These, we believe, are the only statutes on the subject of depositions, which seem to bear upon the case before us. By recurring to them, it will be seen, that in every case enumerated

in the statute, a commission is required to issue; and, except in the case of witnesses absent, and residing out of the State, an affidavit, setting forth the reasons for taking the deposition, is also required.

So essential to the validity of depositions has this court deemed the issuance of a commission, that it has declared depositions irregular and insufficient, which were taken under a commission issued from the clerk's office without the name of the commissioner being inserted at that time; and on motion, depositions so taken were excluded from the jury. *Rupert* v. *Grant et al.* 6 S. & M. 438. ' In the same case the court declared, that the party whose deposition was thus excluded, was not entitled to a new trial for that cause, as it was his business to have prepared for trial, and it was his own laches that the commission was irregularly sued out. Ib. 438.

When it is recollected, that by the common law, depositions *de bene esse* could not be taken and read without the consent of the opposing party, and that the statutes conferring this right are in derogation of the common law, and have prescribed the terms upon which it may be exercised, and fixed the manner of proceeding therein, it will be readily conceded, that depositions taken without a compliance with the rules prescribed, are irregular and unauthorized, and consequently the party taking them cannot insist, as a matter of right, upon the privilege of reading them.

In the case before us, the deposition of Thomas Cargill was taken without any commission having issued authorizing Jennings to take the same, and without any affidavit having been made setting forth the causes which rendered it necessary and proper to take it; as the witness was within the State, his deposition could only be legally taken without consent, by a compliance with the provisions of the statute relating to depositions *de bene esse*. In our opinion, the deposition was taken without authority, and the opposite party had a right to object to the reading of it, unless he expressly or impliedly waived the objections. It was contended in argument, that no commission in this case was necessary, because Jennings was a justice of the peace, and as such had authority *ex officio* to take depositions.

Ragan et al. *v.* Cargill et al.

It is conceded, that there is no statute conferring this power upon justices of the peace; but it is said that the usage and practice in the State has conferred this power upon them.

We are aware, that in the court of chancery the practice is to read depositions taken before justices of the peace without commission; and Chancellor Buckner remarked upon one occasion, that they were as valid as if taken by a commissioner. S. & M. Ch. R. 37. How this practice first originated in the chancery court, or when it was first established, whether by an express but now forgotten rule of court, or by the silent acquiescence of the profession, in a practice deemed useful and convenient, we do not know. But we conceive that the usage of the chancery court in this particular will not justify a similar practice in the circuit or probate court; in neither of which courts, however, are we aware that such practice has generally obtained; nor if it had obtained, are we prepared to admit the legality of a practice contravening the provisions of the statute.

There is a wide difference between the courts of law and chancery in the manner in which facts are established before them. In the court of chancery, all testimony, with very few exceptions, must be by deposition; and the witnesses cannot be heard orally in court. The chancellor has the right to prescribe the persons before whom, and the manner in which depositions shall be taken, where these rules do not conflict with the acts of the legislature. As the practice of taking depositions before justices of the peace to be read in the chancery court, does not seem to violate any statute, we presume that no objection can be made to it.

But the case is very different in a court of law. There all testimony of witnesses, as a general rule, can only be oral, and must be given in open court before the jury. Where the witnesses are living, those courts have no authority, without consent, to introduce depositions at all, except by the express provisions of the statute; and they have no power, in our opinion, to dispense with the requirements of the statutes in any case, unless by consent of parties. We do not believe, therefore, if the practice had prevailed, as was contended by counsel, in the courts of law, that it would be obligatory upon suitors in those courts.

Ragan et al. *v.* Cargill et al.

On the trial of issues sent from the probate to the circuit court, the statute has provided, that the "power of the circuit court, and proceedings relative thereto, shall be as in other cases respecting the trial of issues." How. & H. Dig. 472. A deposition, therefore, which would be excluded in that court on the trial of any other issue pending therein, should for the like cause be excluded on the trial of an issue from the probate court. In fact, the very object in view in sending an issue from the probate to the circuit court, is to have it tried by a jury, according to the rules of practice and proceeding in that court; otherwise the legislature would have provided for the trial of such issues directly in the court of probates. We are satisfied, therefore, that Jennings, in his capacity of justice of the peace, had no authority *ex officio* and without commission, to take this deposition.

But it is said, however this may be, the party had waived his right to object; and, therefore, his motion to exclude should not have been sustained. There is no express waiver of objections; was there any by implication? It is argued, that attending and cross-examining the witnesses, amounted to a waiver. We do not think so. If a party without notice attends and cross-examines a witness, that is a waiver of notice; but we do not think it can be construed into a waiver of such fundamental objections as the want of a commission, and the failure to make the affidavit required by law. Having been notified that the deposition would be taken before Jennings, the defendants had a right to presume that the requirements of the law had been complied with; and the petitioners, proceeding to take it, took it at their peril, as it was their business to have seen that all the law required of them was done.

But it is said, the objection ought to have been made in the probate court, and the party was taken by surprise by the failure to make it there. If the case had been tried in the probate court, and on that trial this deposition had been read without objection, there would be much force in this argument. It is true, this court has held, that if a deposition in the circuit court be read at one trial without objection, a party is not thereby precluded from objecting to it on another trial. 1 How. R. 479.

Ragan et al. *v.* Cargill et al.

We might possibly hold that this rule should not apply where a deposition had been read without objection in one court, and was afterwards offered on a trial in a different court, to which the case was transferred. But the argument is completely answered by the fact that the case was not tried in the probate court, nor the deposition read therein, before the issue was made up and sent to the circuit court. This will appear from an inspection of the record. In fact, it appears that the right to object to this deposition was reserved in the probate court, when the issue was sent to the circuit court. In the record of the order sending the issue to the circuit court, an entry is made in the following language: " It is ordered and decreed, that the parties in this cause may read and refer to the pleadings and proofs in this cause; subject, however, to all just exceptions as to the competency of the witnesses, or the legality of the depositions, of the matters contained in the depositions." It is said, this is only a reservation of objections to the competency of the witnesses, and the legality of the matters contained in the depositions. We do not think so. It is a reservation of objections to the legality of the depositions, as well as the matters contained in the depositions. The ambiguity that may appear in the entry, proceeds evidently from a clerical misprision in omitting a conjunction before the words " of the matters contained in the deposition." Any other construction would require us to reject an important part of the language contained in the entry. The objection to the deposition, in our opinion, was, therefore, well taken, and ought to have been sustained by the court; and it was erroneous to overrule it, and permit the deposition to be read.

But it is argued, if even this be true, yet we should affirm the judgment, because the other evidence fully warranted the verdict of the jury. We have carefully examined the evidence, which is very voluminous. The deposition *of Thomas* Cargill was material, direct, positive, and, if believed by the jury, conclusive on the issues presented to them. Being of this character, we must presume it had an important influence in the formation of their verdict; at any rate, it was well calculated to have such effect, and we are, therefore, unable to say that it did not.

The other evidence in the record, consisting of many facts and circumstances of an apparently contradictory and irreconcilable character, renders it a case peculiarly fit for the determination of a jury; and, in view of the whole case, we do not feel ourselves at liberty to affirm the judgment. We do not think it such a case as would warrant us in sustaining the verdict notwithstanding the error of the court in admitting illegal testimony.

We believe it is the true rule, wherever the record contains conflicting evidence, and on the trial material, important, and relevant testimony, which may have influenced the jury in forming their verdict, has been improperly admitted, to remand the cause for a new trial, unless we are clearly satisfied that the preponderance of the remaining evidence is so strong in favor of the verdict, that we would have granted a new trial, if the case on that evidence alone had come before us, and the verdict had been different.

The proper question, in our opinion, is not whether on the evidence legally admitted, this court would render a similar verdict to that contained in the record; but, would it set aside a different verdict rendered on the same evidence?

Entertaining this view of the law, we think it our duty to reverse the judgment, and remand the cause for a new trial of the issues.

A petition for re-argument was filed in this case by the counsel for appellees, but refused by the court.